ROWE, J.,
concurring in part, dissenting in part.
I concur with the majority’s determination that the trial court properly denied Christopher Perry’s motion for judgment of acquittal on counts one through six and in denying his motion in limine to exclude references to prior sexual conduct between Perry, Mary Perry (his wife), and Young. However, I respectfully dissent from the majority’s holding that the trial court erred in denying the motion for judgment of acquittal on the charge of conspiracy to commit sexual battery.

Background

This case arises from the sexual abuse of Christopher Perry’s daughter, E.P., by Robert Young.[1] Complicit in the abuse of E.P. were Perry, Mary Perry[2] (Perry’s wife and E.P.’s mother), and Patricia Wol-oszynowski[3] (Perry’s mother-in-law and E.P.’s grandmother).
Perry met Robert Young in 1994, and the two formed a close friendship, spending their days off together, and attending each other’s family events. In 2001, shortly before Perry married Mary Perry, E.P. was born. By this time, Young was such an integral part of the Perry family that he drove Mary Perry to the hospital when she gave birth to E.P. Mary Perry described Young as almost a godfather to her children and as a brother to Perry. Perry himself described Young as his brother, and allowed his daughter E.P. to call *393 Young “Uncle Robert.” But the relationship between Perry and Young was far more intimate than that of brothers. Perry, Mary Perry, and Young participated in threesomes. And unbeknownst to Perry, Mary Perry and Young had a long-term affair apart from the threesomes.
In 2010, while the Perry family was living with Mary Perry’s mother, Patricia Woloszynowski, Young moved into the Perry home. Neither Perry nor Mary Perry were working during this time; Young paid all of their bills and provided transportation for the family. The Perry family was financially dependent on Young.
When Young initially moved into the Perry home, he slept on the couch, but he soon moved into E.P.’s bedroom and slept in the same bed as the eight year-old little girl. The Perry home was extremely small, with three bedrooms and one bathroom, all within a few feet of one another. Perry and Mary Perry shared one bedroom. The grandmother and E.P.’s two younger brothers shared the second bedroom. E.P. and Young shared the third bedroom. Despite the fact that Perry and Mary Perry knew that Young was a convicted sex offender, neither objected to Young sleeping with E.P. Neither did they object to Young bathing their young daughter, even though E.P. was old enough to bathe herself and was capable of doing so.
In November 2010, the Department of Children and Families received an alert about E.P. sleeping in the same bed as an uncle. When confronted by the DCF investigator, Perry and Mary Perry denied that Young was sleeping in E.P.’s bedroom and further denied that any of their children were left alone "with Young. After the investigator prepared a safety plan to protect the Perry children from sexual abuse, Perry and Mary signed the safety plan, affirmatively agreeing that 'none of the children would have unsupervised contact with Young. However, despite their promise to investigators, Perry and Mary Perry continued to allow Young, a known sex offender, to sleep with their eight year-old daughter.
In February 2011, the Department received another report of an adult male sleeping in the same bed as E.P. When interviewed by a child protection team investigator, E.P. admitted that Young was sleeping in her bed and that her parents were aware of the sleeping arrangement. The investigator and a detective observed a lock on the outside of E.P.’s door. E.P. would later tell investigators that her parents locked the door to her bedroom to keep her inside the room with Young. At a follow-up interview, E.P. admitted that Young had penetrated her vaginally and anally with his penis, that he forced her to perform oral sex on him, and that he performed oral sex on her.
When confronted by investigators, Perry stated that he remembered signing the December 2010 safety plan, but denied that Young slept with E.P. Perry insisted that Young was sleeping on the couch. Perry also denied that Young had any unsupervised contact with E.P. Perry admitted to the investigator that he was aware that Young was a convicted sex offender but asserted that he did not believe that Young would do anything to hurt E.P. When Young voluntarily left the Perry home that same day, Young gathered his belongings from E.P.’s bedroom.
When confronted by investigators, Mary Perry admitted that she and Perry never attempted to follow the safety plan put in place to protect the Perry children from sexual abuse by Young. Mary testified that she witnessed Young sexually abusing E.P., that she told Perry what she had seen, and that neither of them took any *394 action to prevent the continuation of the abuse. Mary Perry further stated that she and Perry concealed Young’s actions from the Department during the investigation. Mary Perry and Perry consistently denied to DCF investigators that Young slept with their daughter and misled investigators by falsely stating that Young was sleeping on the couch.
At trial, Perry continued to assert that Young never abused his daughter. Perry denied that he knew that Young’s prior sex offense was for molesting Young’s thirteen-year-old step-daughter, even after a recorded interview of Perry making such an admission to a DCF investigator was played for the jury. Perry admitted that he made the conscious decision to lie to the authorities that were investigating the allegations of sexual abuse. He stated that he did not believe the allegations against Young because he had known Young for eighteen years and he was like a brother to him.
Perry moved for judgment of acquittal on the charge of conspiracy to commit sexual battery, arguing that there was no evidence that he had conspired with Mary Perry or Patricia Woloszynowski for the crime of capital sexual battery to be committed. The trial court found that there was sufficient evidence to allow this charge to go to the jury, and it denied the motion.

Judgment of Acquittal

The appropriate standard of review on a motion for judgment of acquittal is de novo. Jones v. State, 4 So.3d 687, 688 (Fla. 1st DCA 2009). If the State has presented competent evidence to establish every element of the crime, then judgment of acquittal is improper. State v. Odom, 862 So.2d 56, 59 (Fla. 2d DCA 2003).
I dissent from the majority’s conclusion that the trial court should have granted Perry’s motion for judgment of acquittal on the charge of conspiracy to commit capital sexual battery. “A conspiracy exists where there is an express or implied agreement between two or more persons to commit a criminal offense and an intention to commit the offense. . The fact-finder may infer the agreement from the circumstances; direct proof is not necessary.” Vasquez v. State, 111 So.3d 273, 275 (Fla. 2d DCA 2013) (internal citations omitted). Here, the State presented sufficient evidence to establish an implied agreement between Perry and his wife, Mary Perry, to commit the offense of capital sexual battery.
There was no dispute that Perry and Mary Perry were aware that Young was a convicted sex offender. The State presented evidence to show that Perry knew that the conviction stemmed from Young’s molestation of his thirteen-year-old stepdaughter. Despite this knowledge, Perry and Mary Perry consciously agreed to allow Young to sleep in the same bed as their eight-year-old daughter, rather than requiring him to sleep on the couch or in another bedroom. The State presented evidence that Mary Perry witnessed Young sexually abusing E.P., that she told Perry what she had seen, and that neither of them took any action to prevent the continuation of the abuse or to even confront Young. In fact, when Perry and Mary Perry were interviewed by investigators from the Department of Children and Families, they gave identical false statements on more than one occasion where they both denied to investigators that Young was sleeping in the same bed as E.P.; rather, they both insisted that Young had been sleeping on the couch. Their agreement to not disclose the actual sleeping arrangements prevented the removal of E.P. and her siblings from the home at an earlier date, which could have prevented additional sexual abuse to E.P.
*395 Further, due to the investigators’ concerns about Young sexually abusing E.P., the Department presented Perry and Mary Perry with child safety plans designed to minimize the risk of sexual abuse by requiring no unsupervised contact between Young and the Perry children. Perry and Mary Perry both confirmed in writing that they would not allow Young to have unsupervised contact with their children and promised that Young would not sleep in the same bed as E.P. However, both Perry and Mary Perry willfully disregarded the plan and allowed Young to continue to sleep in the same bed as E.P. and to continue to bathe her. They did nothing to prevent the continued abuse of E.P. Indeed, Perry and Mary Perry went so far as to lock E.P. in her bedroom with the convicted sex offender.
The jury heard testimony that the Per-rys were financially dependent on Young. The Perrys were unemployed and Young paid for their utilities, cell phone, Internet access, and furniture. The jury also heard testimony about the long-term and close friendship between Young and the Perrys. The jury heard about the sexual relationships between Perry, Mary Perry, and Young. Thus, there was ample evidence before the jury to suggest why Perry and Mary Perry might conspire to conceal the abuse of their daughter by Young.
When the evidence is viewed in the light most favorable to the State, these collective actions provide strong evidence of a tacit agreement between Perry and Mary Perry to allow Young to have unrestricted access to their eight-year-old daughter and to actively conceal Young’s abuse of E.P. Moreover, the lies to the child protection investigators by Perry and Mary Perry were overt acts in furtherance of the charged conspiracy. See Melahn v. State, 843 So.2d 929, 930 (Fla. 5th DCA 2003) (holding that “[cjertain falsehoods told to an officer seeking information, which go beyond merely disavowing knowledge or refusing to cooperate with an investigation,” may constitute an overt act). Under these facts, the trial court did not err in denying the motion for judgment of acquittal on the conspiracy count because the jury could infer from the above-described circumstances that Perry and Mary engaged in a conspiracy to commit the offense of capital sexual battery of E.P. For these reasons, I would affirm the trial court’s judgment on all counts.

. Robert Young was convicted in a separate case of five counts of attempted capital sexual battery, lewd and lascivious molestation, and provision of obscene material to a minor and was sentenced to life imprisonment.

. Mary Perry pleaded guilty to conspiracy to commit sexual battery and aggravated child neglect and was sentenced to thirty years' imprisonment.

.Patricia Woloszynowski pleaded guilty to aggravated child neglect and was sentenced to fourteen years’ imprisonment.